# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| CANNING LOGISTICS SERVICES, LLC, <br><br> Plaintiff, <br><br> vs. <br><br> BAXTER BAILEY & ASSOCIATES, INC., a Mississippi Corporation; JT REESOR, and PAUL FOWLER, <br><br> Defendants. | 8:17CV116 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on the Motion for Temporary Restraining Order and Preliminary Injunction, ECF No. 15, filed by Plaintiff Canning Logistics Services, LLC ("Canning"). The Court ruled on the request for temporary restraining order on May 2, 2017. *See* ECF No. 26. This order addresses the request for preliminary injunctive relief. For the reasons stated below, the motion will be granted in part and denied in part.

## BACKGROUND[1]

Canning provided freight-hauling transportation logistics for customers as both a carrier and a freight broker.[2] In September of 2014, Canning entered into a written contract ("Broker-Carrier Agreement") with Cyclone Carriers, LTD, ("Cyclone") to complete a series of freight-hauling jobs. After working with Canning for approximately two years, Cyclone demanded payments it alleged Canning owed based on oral

---

[1] The facts are restated from the Court's Temporary Restraining Order, ECF No. 26.

[2] The evidence indicates that Canning recently ceased operating as a freight broker and is now exclusively a carrier.

agreements with Cyclone. Canning denied the existence of these oral agreements and claimed all money owed under the Broker-Carrier Agreement was paid. On October 26, 2016, Cyclone sued Canning in the District Court of Pottawattamie County, Iowa. On February 28, 2017, the Pottawattamie County District Court determined that the alleged oral agreements between Canning and Cyclone were within the scope of the Broker-Carrier Agreement and governed by its terms, including an arbitration provision. Accordingly, that court stayed the proceeding, pending arbitration.

In early January of 2017, Canning became aware that Defendant Baxter Bailey & Associates, LLC, ("BBA") along with its President, JT Reesor, and its employee Paul Fowler, ("Defendants") were attempting to collect debts allegedly owed by Canning to Cyclone, which Cyclone allegedly assigned to BBA. Beginning on January 25, 2017, Fowler sent a series of emails to Canning Director of Operations Tim Lukowski,[3] and copied several major customers of Canning, accusing Canning of dishonesty and of sending checks without sufficient funds. The email also threatened Lukowski with "criminal charges." Fowler sent similar emails on February 21 and 22, 2017, again copying various Canning customers, demanding payment from Lukowski and accusing Lukowski of personal and professional dishonesty. On February 24, 2017, and March 2, 2017, BBA sent letters to two major Canning customers, stating that the customers were liable for the debt owed to Cyclone due to Canning's nonpayment. On March 29, 2017, a Canning customer informed Canning that it was suspending payments to

---

[3] Lukowski is also the co-founder, majority owner, and Executive Vice President of Canning. Lukowski Aff. ¶ 5, ECF No. 17-1, Page ID 152.

Canning pending an investigation into allegations that Canning engaged in double-brokering and failed to pay its carriers.

Canning filed suit against Defendants in the District Court of Douglas County, Nebraska, on March 16, 2017, alleging tortious interference with business relationships and defamation. ECF No. 1-2. Defendants removed the action to this Court on April 4, 2017. ECF No. 1. On April 25, 2017, Canning moved for a temporary restraining order ("TRO") and preliminary injunction. ECF No. 15. Canning asked this Court to enjoin Defendants from (1) attempting to collect from Canning or third-parties any debts allegedly owed to Cyclone by Canning; (2) making any representations regarding the credit rating or reputation of Canning or regarding the status of the litigation and arbitration pending between Cyclone and Canning; (3) making any statements disparaging Lukowski; or (4) making any representations to any third party, threatening Canning with litigation.

The Court held a hearing on May 1, 2017, on the request for temporary restraining order. All parties were represented by counsel, who requested that a hearing on the motion for preliminary injunction be scheduled for a later date. On May 2, 2017, the Court entered an order, ECF No. 26, granting the request for temporary restraining order, in part. The Court temporarily restrained Defendants from attempting to collect any debt allegedly owed by Canning to Cyclone and from contacting current Canning customers to attempt to collect any debt allegedly owed by Canning to Cyclone.

The Court held a hearing on the request for preliminary injunction on May 11, 2017. All parties were represented by counsel.

## STANDARD OF REVIEW

Courts in the Eighth Circuit apply the factors set forth in *Dataphase Sys., Inc. v. CL Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc), when determining whether to issue a preliminary injunction. Those factors are: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." *Id.* "No single factor is determinative." *WWP, Inc. v. Wounded Warriors, Inc.*, 566 F. Supp. 2d 970, 974 (D. Neb. 2008). "A preliminary injunction is an extraordinary remedy and the burden of establishing the propriety of an injunction is on the movant." *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)).

## DISCUSSION

As with the TRO, the Court has reviewed the *Dataphase* factors and applied them to the facts of this case, based on the evidence currently before the Court.

Canning argues that it is likely to prevail on its claim based on tortious interference with business relationships. Under Nebraska law, Canning must establish, (1) the existence of a valid business relationship or expectancy, (2) knowledge by Defendants of the relationship or expectancy, (3) an unjustified intentional act of interference by Defendants, (4) proof that the interference caused the harm alleged, and (5) damage to Canning. *See Forest Prod. Indus., Inc. v. ConAgra Foods, Inc.*, 460 F.3d 1000, 1002 (8th Cir. 2006) (citing *Macke v. Pierce*, 661 N.W.2d 313, 317 (Neb. 2003)).

Canning argues that BBA contacted several of Canning's customers attempting to collect directly from the customers for the debts allegedly owed by Canning to Cyclone and assigned to BBA. As a result, Canning alleges, several customers have either terminated or suspended their business relationship with Canning. Canning also alleges that other potential customers have declined to retain Canning, likely because of BBA's efforts to publicize its dispute with Canning. Defendants argue that Canning cannot establish that Defendants' actions caused the harm alleged by Canning, because the terminations and suspensions resulted from Canning's double-brokering in violation of its contracts with customers, and the revocation of Canning's broker bond.

The Court finds that Canning has met its burden of showing a probability of success on the merits with respect to its action for tortious interference with business relationships.

In addition to the strength of its claim on the merits, "a movant for a preliminary injunction should show a threat of irreparable harm." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 318–19 (8th Cir. 2009) (citing *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996); *Dataphase*, 640 F.2d at 113). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Id.* at 319.

Canning argues that it has no adequate remedy at law, because damage to its business goodwill cannot be remedied, quantified, or adequately compensated through monetary damages. *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003) (quoting *United Healthcare Ins. Co. v. AdvancePCS*, 316 F.3d 737,

5

741 (8th Cir. 2002)) ("Loss of intangible assets such as reputation and goodwill can constitute irreparable injury.").

Defendants argue that any loss of customers incurred by Canning is a result of Canning's own actions, independent of BBA's collection efforts. Defendants also argue that Canning has no effective goodwill left, both because of Canning's prior actions and because Canning has ceased operating as a broker.

Although Canning has ceased operating as a broker, it remains in business as a carrier, and thus possesses some goodwill and value as a going concern. The Court finds that Canning has sufficiently shown the likelihood of irreparable harm, and that this factor favors granting the injunction.

After examining the threat of irreparable harm, the Court must also balance this threat against the possible harm that may result to other interested parties, including Defendants, if the injunction is not granted. *Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1039 (8th Cir. 2016)). Here, BBA argues that the balance of harms favors denying the injunction because Defendants will suffer serious harm if the injunction is granted for the pendency of litigation. Most notably, Defendants cite the eighteen-month statute of limitation under 49 U.S.C. § 14705,[4] which limits the time BBA can collect on the debts assigned to it by Cyclone. Because the preliminary injunction may enjoin Defendants beyond this window, Defendants argue that such an injunction may destroy BBA's only opportunity to collect on the debts.

---

[4] 49 U.S.C. § 14705 states "[a] carrier providing transportation or service subject to jurisdiction under chapter 135 must begin a civil action to recover charges for transportation or service provided by the carrier within 18 months after the claim accrues."

The Court is unpersuaded by Defendants' argument, and finds that the balance of harms favors granting the injunction, for two reasons. First, the potential harm to Defendants can be remedied through the bond the Court will require Canning to post per Federal Rule of Civil Procedure 65(c). Second, nothing in the preliminary injunction the Court will issue will enjoin Defendants from filing suit against any third-party whom Defendants believe may be liable on any debt owed to BBA assigned from Cyclone.

The Court finds that the last factor, the consideration of the public interest, is neutral and does not weigh for or against issuing the injunction.

After considering all of the relevant *Dataphase* factors, the Court will grant the motion for preliminary injunction in part, in accordance with the previously issued Temporary Restraining Order, ECF No. 26.

As stated, under Federal Rule of Civil Procedure 65(c), the Court can only issue the preliminary injunction if Canning offers adequate security as determined by the Court. After reviewing the evidence, the Court will set the bond amount at $350,000. Accordingly,

IT IS ORDERED:

1. Plaintiff Canning Logistical Services, LLC's Motion for Preliminary Injunction, ECF No. 15, is granted in part as follows:

    a. Defendants are enjoined from attempting to collect on any debts allegedly owed by Plaintiff Canning Logistical Services, LLC, to Cyclone Carriers, LTD;

    b. Defendants are enjoined from contacting any customers of Plaintiff Canning Logistical Services, LLC, for the purpose of collecting any debts allegedly owed by Plaintiff Canning Logistical Services, LLC to Cyclone Carriers, LTD;

    c. To the extent the Motion seeks the issuance of a preliminary injunction, it is otherwise denied; and

2. Within fourteen days of the date of this order, Plaintiff Canning Logistical Services, LLC will remit to the Clerk of the Court security in the amount of $350,000.

Dated this 16th day of May, 2017.

                                    BY THE COURT:

                                    s/Laurie Smith Camp
                                    Chief United States District Judge